IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DAVID BEATY and DB Sports LLC,** ) | |
| ) | |
| **Plaintiffs,** ) | Case No. |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| **KANSAS ATHLETICS, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

Plaintiffs David Beaty ("Coach Beaty") and DB Sports LLC ("DB Sports"); collectively with Coach Beaty, "Plaintiffs"), by and through undersigned counsel, and for their Complaint against Defendant Kansas Athletics, Inc. ("Kansas Athletics" or "Defendant"), state and allege as follows:

### NATURE OF THE ACTION

1.  This is a civil action for breach of contract under Kansas law and violation of the Kansas Wage Payment Act under K.S.A. § 44-313.

### PARTIES

Plaintiff David Beaty is an individual and citizen of the State of Texas.

2.  Plaintiff DB Sports LLC is a limited liability corporation organized under the laws of the State of Kansas. Plaintiff DB Sports LLC's sole member is a citizen of the State of Texas.

3.  Defendant Kansas Athletics, Inc. is a not-for-profit company organized and existing under the laws of the State of Kansas. Its principal place of business is in Lawrence, Kansas. It may be served with process through its registered agent, Sheahon Zenger, 205 Wagnon Student

Athlete Center, University of Kansas, Lawrence, Kansas 66045 or wherever Mr. Zenger may be found.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), because Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.

5. This Court has personal jurisdiction over Defendant because it is organized and exists under the laws of the State of Kansas, has its principal place of business in Kansas, and has engaged in the conduct alleged in this complaint in Kansas.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims in this action occurred in this District. Moreover, Plaintiffs and Defendant have contracted that this Court is a proper venue for the determination of disputes related to various contracts at issue in this suit.

## INRODUCTION

7. Kansas Athletics hired Coach Beaty in December of 2014 to turn-around a football program beset with long-term problems.

8. In recognition of the nature of the problems and the time expected to properly address them, Kansas Athletics provided Coach Beaty a multi-year contract.

9. Kansas Athletics additionally entered into a multi-year contract with DB Sports.

10. Those collective agreements provide that Kansas Athletics would pay Coach Beaty stated sums of money should it terminate his employment without cause prior to the end of their respective terms.

11. In November 2018, Kansas Athletics exercised its undisputed right to terminate Coach Beaty without cause.

12. That termination without cause was confirmed privately, publicly, orally, and in writing, as was Kansas Athletics' contractual obligation to pay Coach Beaty the $3 million dollars based on the termination without cause occurring prior to the end of the agreed-to terms.

13. Despite the clarity of the contractual language and the nature of Coach Beaty's termination without cause, Kansas Athletics officials began seeking avenues by which it could forgo the money owed to Coach Beaty or otherwise secure leverage by which it might negotiate a lesser amount.

14. In private meetings prior to and following the termination without cause, Kansas Athletics officials unabashedly raised the need to "find something" on Coach Beaty such as finding a "dead hooker in [Coach Beaty's] closet."

15. In the weeks after that unequivocal termination without cause and days after Coach Beaty declined to provide Kansas Athletics an extension under which it could remit the payments owed to him over a longer period of time, Kansas Athletics notified Coach Beaty of a self-initiated NCAA investigation being conducted looking into the conduct and behavior of – not Coach Beaty – but one of his subordinates that occurred, if at all, a year or more earlier.

16. Using the self-initiated investigation as an excuse, Kansas Athletics has refused to honor its contractual obligations and withheld the payments previously confirmed as owed to Coach Beaty. In fact, Kansas Athletics now has taken the unprecedented position that the results of its self-initiated investigation might somehow provide it the ability to retroactively reclassify Coach Beaty's termination as with cause, despite making no attempt to comply with the

requirements for a termination with cause and instead having long-ago terminated him without cause.

17. Kansas Athletics apparently wants to un-bake the proverbial cake it made. It unequivocally terminated Coach Beaty without cause. *Post hoc* attempts to change that now are unbecoming of the institution that Coach Beaty still holds in great regard. Nevertheless, Coach Beaty will not stand idle and do nothing while Kansas Athletics fails to honor its agreements and commitments to him.

## ALLEGATIONS OF FACT

### Coach Beaty's Rise in the Coaching Ranks

18. Coach Beaty first developed a reputation as an outstanding high school football coach in the Dallas-Fort Worth Metroplex.

19. Based on proven results both on and off the field, Coach Beaty quickly advanced through the major college football coaching ranks, with assistant coaching stops at Rice University, the University of Kansas, and Texas A&M University.

### Kansas University Hires Coach Beaty

20. On or about December 5, 2014, Kansas Athletics hired Coach Beaty to become the Head Football Coach at the University of Kansas ("KU").

21. Coach Beaty was the fourth head football coach in six years for KU and was tasked with turning around a long-struggling program with major obstacles both on and off the field.

22. For instance, Coach Beaty inherited a KU team that had only filled approximately 60 out of the 85 scholarships allowed heading into the 2015 season.

23. Compounding the student-athlete shortage, the KU team had problems with student-athlete academic progress.

24. Coach Beaty understood that overcoming these difficult challenges would take time and conviction.

## Coach Beaty's Contracts

25. So, did, apparently, KU and Kansas Athletics, as Kansas Athletics entered into a five-year Employment Agreement with Coach Beaty on December 8, 2014.

26. That Employment Agreement made clear that if Coach Beaty was ever terminated without cause, he would be entitled to compensation in the form of all payments owed under the agreement "for 24 months or up to December 31, 2019 (whichever occurs first.)"[1]

27. Recognizing Coach Beaty's positive progress, Kansas Athletics amended Coach Beaty's Employment Agreement on December 1, 2016, to extend the term to seven years.[2]

28. That First Amendment to Employment Agreement imposed amended obligations on Kansas Athletics should it terminate Coach Beaty's employment without cause:

> [Section 7] In the event that Head Coach's employment is terminated without cause . . . [Coach Beaty] shall be entitled to a payment . . . in the total amount of $2,580,000.00 payable in six equal installments commencing on the last day of the month immediately following the month in which the termination date occurs and continuing on the last day of each succeeding month thereafter; the payments under this Section 7 and under Section 12 shall be considered as Liquidated Damages with no other sums or damages of any kind whatsoever paid by Athletics to Contractor.
> . . .
> [Section 12] Athletics shall have the right to terminate this Agreement without cause at any time upon written notice to Head Coach. In the event Athletics terminates this Agreement without cause, Athletics, in addition to all amounts due and owing under this Agreement up to the date of termination, shall be liable to Head Coach for a Liquidated Damages total payment of $420,000.00 payable in six equal installments; other than payments under Section

---

[1] A true and correct copy of Coach Beaty's Employment Agreement is attached as Exhibit A to this Complaint.

[2] A true and correct copy of Coach Beaty's Amended Employment Agreement is attached as Exhibit B to this Complaint.

{00194744.DOCX}                                5

> 7 and payments under this Section 12, no other sums or damages of any kind whatsoever shall be paid by Athletics to Head Coach.
>
> . . . The Liquidated Damages above shall be paid to Head Coach in six equal monthly installments commencing on the last day of the month immediately following the month in which the termination date occurs and continuing on the last day of each succeeding month thereafter.
>
> The parties agree that such Liquidated Damages are in lieu of all other compensation and benefits owed to Head Coach, including annual and sick leave, otherwise owed to Head Coach under any and all other provisions of this Agreement . . .

29. In connection with Coach Beaty's Employment Agreement, Kansas Athletics also entered into a Professional Services Agreement with DB Sports.[3]

30. Mirroring in pertinent respects the Employment Agreement, the Professional Services Agreement included corresponding guaranteed payments in the event Coach Beaty was terminated without cause prior to end of the Contract.[4]

## Coach Beaty Begins to Right the Ship

31. Over the next few seasons, Coach Beaty – with the help of outstanding assistant coaches and hard-working, committed student-athletes – began to increase the talent on and performance of the KU team.

32. On the field, Coach Beaty's KU teams set a record for the number of Big XII Players of the Week recognitions in a season; defeated The University of Texas for the first time since 1938; defeated Texas Christian University for the first time in KU's Big XII Conference history; and notched the first on-the-road victory and back-to-back wins since 2009.

---

[3] A true and correct copy of DB Sports' Professional Services Agreement is attached as Exhibit C to this Complaint.

[4] A true and correct copy of DB Sports' Amended Professional Services Agreement is attached as Exhibit D to this Complaint.

{00194744.DOCX}                                  6

33. The talent level in the KU Football program was also on the rise. During Coach Beaty's tenure, KU Football produced its first unanimous All-Big XII First Team selection (Dorance Armstrong) and its first back-to-back All Big XII First Team selection (Daniel Wise).

34. Coach Beaty and his staff coached Steven Sims to second-all-time in career catches for KU, and Joe Dineen became the all-time leader in KU Football history in tackles for loss.

35. Just as important to Coach Beaty, if not more so, he and his staff were providing the off-the-field guidance and tools to ensure the student-athletes under his care became good, responsible, and contributing citizens.

36. Football graduation rates during Coach Beaty's tenure reached their highest levels in any three-year span in the team's history.

37. The team recorded the highest single-year graduation rate in the team's history—95% of seniors graduated with many going on to pursue post-graduate degrees.

38. The team's Academic Progress Rate increased every year.

39. The coaches, staff, and players volunteered thousands of hours with local organizations in Lawrence to give back to their community.

40. Players received comprehensive training on healthy relationships and consent, drugs and alcohol, personal finance, and respecting all individuals regardless of race, creed, gender, or orientation.

41. Under Coach Beaty, KU Football actively reframed and redefined what it means to be a student athlete and never shied away from tackling the issues that have impacted college athletics and society as a whole.

42. These efforts allowed Coach Beaty to confidently make one of his final public statements as the head coach of KU Football, "If you want a good man, get a Kansas football player."

## Jeff Long is Hired and Terminates Coach Beaty Without Cause

43. In July of 2018, Kansas Athletics hired Jeff Long as KU's new Athletics Director ("AD Long").

44. By November of 2018, AD Long and Kansas Athletics decided that, despite the positive steps forward in many areas under Coach Beaty, they would move in a different direction with KU football.

45. On November 4, 2018, AD Long verbally informed Coach Beaty in a private meeting that he was being terminated without cause and would not be returning for his contractually guaranteed fifth, sixth, and seventh seasons.

46. AD Long further promised Coach Beaty that, because he was being terminated without cause, Kansas Athletics would honor his Employment Agreement and the Professional Services Contract with DB Sports and pay the $3 million dollars it owed for terminating him without cause.

47. That same evening, AD Long publicly confirmed in a press conference that Coach Beaty was being terminated without cause, that Kansas Athletics owed the money agreed to under the contracts, and that it would fulfill its obligations to Coach Beaty under those agreements.

48. Coach Beaty reasonably and foreseeably relied on these statements and agreed to stay on as football coach through the end of the season in order to smooth the coaching transition for KU.

49. On November 29, 2018, six days following the final game of the 2018 season, AD Long confirmed in a memorandum to Coach Beaty what he had privately promised Coach Beaty and publicly reiterated:

> As discussed in my office on November 4, pursuant to Section 12 of your Employment Agreement, your Agreement with Kansas Athletics Inc. was terminated without cause effective November 24, 2018. All liquidated damages payments owed to you will be paid out consistent with Section 12 of your current amended Employment Agreement and Section 7 (D) of your current amended Professional Services Agreement.
>
> I appreciate your contributions to the University of Kansas, Kansas Athletics, and Kansas Football during your time as Head Football Coach and wish you success in your future endeavors.[5]

50. However, despite AD Long's public, private, and written communications unequivocally stating that Coach Beaty was being terminated without cause and repeatedly acknowledging Kansas Athletics' agreement to make the guaranteed $3 million-dollar payment, AD Long and others in Kansas Athletics were preparing other, private plans contrary to the commitments made to Coach Beaty.

51. In the days and weeks that followed, and on more than one occasion and in the presence of multiple KU and/or Kansas Athletics employees, AD Long and at least one other senior Kansas Athletics official commented that they needed to "find something on Coach Beaty," so they might avoid having to pay him the contractually owed $3 million dollars.

52. More specifically, it was suggested by those same employees that Kansas Athletics needed to find "a dead hooker . . . in [Coach Beaty's] closet" to provide leverage in resolving their $3 million dollar payment problem.

---

[5] A true and correct copy of AD Long's written memorandum to Coach Beaty is attached as Exhibit E to this Complaint.

53. Kansas Athletics began by requesting an extended payment schedule purportedly to alleviate the tax implications of the $3 million dollars it admittedly owed Coach Beaty.

54. Coach Beaty declined to extend the contracted payment schedule as requested by Kansas Athletics.

55. Shortly thereafter, on December 14, 2018, Coach Beaty received an unannounced letter from KU General Counsel Brian White ("Mr. White") communicating, for the first time, that KU was affirmatively initiating an "investigation" to determine if one of Coach Beaty's former subordinates had allegedly committed NCAA rules violations a year or more earlier.

56. Mr. White's letter also incredibly ignored Coach Beaty's prior termination without cause more than one month before and acted as if he were still a KU employee, stating that, because of KU's self-examination, Coach Beaty's already acknowledged severance payments would now be withheld until Kansas Athletics could evaluate the investigative results and determine whether Coach Beaty's "separation" would be with or without cause.

57. Coach Beaty understood, however, that he had already and unequivocally been terminated without cause weeks earlier – publicly and privately, orally and in writing – and there had never been any mention or suggestion of impropriety or NCAA violations while he was employed.

58. He further understood that, under the terms of his contract, the withholding of his payments was without legal justification, but Kansas Athletics' actions would now force him to obtain counsel to ensure that it would honor its contracts and commitments to him.

59. On December 20, 2018, counsel for Coach Beaty responded to the December 14th communication and indicated the belief that Kansas Athletics was using its self-initiated investigation as a subterfuge to avoid paying the money it clearly owed.[6]

60. The letter notified Kansas Athletics that Coach Beaty would treat the failure to timely pay under the contract as a material breach.

61. To date, Kansas Athletics has refused to respond in any way to Coach Beaty's letter and no payments have ever been made by Kansas Athletics to Coach Beaty.

62. As a result, Kansas Athletics is in material default.

63. Kansas Athletics' actions have also forced Coach Beaty to retain additional and separate counsel to address the NCAA allegation. In a December 21, 2018, letter to Kansas Athletics, Coach Beaty confirmed his willingness to promptly interview as part of KU's investigation and, in order to prepare, requested certain documents relating to his employment under the control of Kansas Athletics. Coach Beaty eventually received some of the documents he requested on February 1, 2019. To date, Kansas Athletics has not provided the majority of the documents Coach Beaty requested.

64. While Kansas Athletics was unwilling to act with any urgency, it has been more than willing to notify prospective employers that Coach Beaty is the subject of an open NCAA investigation. Coach Beaty believes this is yet another tactic by Kansas Athletics to pressure Coach Beaty into accepting something less than what is undisputedly owed.

65. After multiple requests for a date to be interviewed, Coach Beaty finally got the opportunity to sit for an interview on February 27, 2019. That was more than two months after Mr.

---

6 A true and correct copy of that December 20, 2018, letter is attached as Exhibit F to the Complaint.

{00194744.DOCX}                                         11

White told Coach Beaty that he could be interviewed in order to clear his name and receive the payments he is owed.

66. Coach Beaty answered the investigators' questions fully.

67. He has not blocked KU officials from reviewing the transcript of his interview. In fact, he has offered to make his transcript available to KU officials consistent with NCAA bylaws.

68. After months of waiting for an interview Mr. White previously indicated would allow Kansas Athletics to proceed with payment, Kansas Athletics now claims that it cannot pay Coach Beaty the money it owes him until the investigation is finished.

69. The investigation could potentially last for months before it concludes. Kansas Athletics continues to move the goal posts to avoid its contractual obligations that it acknowledged publicly, privately, orally, and in writing many times before using a self-initiated investigation as a shield to delay or attempt to avoid them.

## FIRST CAUSE OF ACTION
**(Breach of Contract)**

70. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

71. As described above, Plaintiffs and Defendant are parties to fully executed contracts, whereby Defendant owes Plaintiffs guaranteed payments after electing to terminate the contracts without cause.

72. Plaintiffs fully performed their obligations under the contracts.

73. Defendant has materially breached the Contract by not making the guaranteed payments owed, which Defendant has previously confirmed multiple times in multiple ways are owed subsequent to its election to terminate without cause.

74. Plaintiffs have been damaged by Defendant's breaches of the contracts.

## SECOND CAUSE OF ACTION
### (Kansas Wage Payment Act under K.S.A. § 44-313)

75. Plaintiff David Beaty incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

76. Plaintiff David Beaty is an employee covered by and subject to the Kansas Wage Payment Act, K.S.A. § 44-313, *et seq.*

77. The Kansas Wage Payment Act provides that employers must pay employees all wages due.

78. The remaining amounts owed to Plaintiff David Beaty constitute wages under the Kansas Wage Payment Act because they are compensation for labor or services rendered by an employee.

79. Defendant has failed to pay Plaintiff David Beaty all wages due in violation of the Kansas Wage Payment Act.

80. Defendant's failure to pay all wages due to Plaintiff David Beaty is willful.

81. Plaintiff David Beaty is entitled to judgment in his favor and a monetary award to compensate him for all wages due, interest, and statutory penalties, and all other damages and remedies allowed by law under the Kansas Wage Payment Act, as well as an award of costs.

### PRAYER FOR RELIEF

82. Plaintiff David Beaty prays for judgment as follows:

   a. An award of damages to compensate him for Defendant's breaches of contract;

   b. An award of damages to compensate him for all wages due, plus interest under the Kansas Wage Payment Act, K.S.A. § 44-313, *et seq.*

    c.    Statutory penalties under the Kansas Wage Payment Act, K.S.A. § 44-313, *et seq.*

    d.    For attorneys' fees as may be under any and all applicable bases;

    e.    For costs of suit incurred herein;

    f.    Pre- and post-judgment interest at the maximum rate allowed by law;

    g.    For such other further relief as the Court may deem just and proper.

83.    Plaintiff DB Sports, LLC prays for judgment as follows:

    a.    An award of damages to compensate it for Defendant's breach of contract;

    b.    For attorneys' fees as may be under any and all applicable bases;

    c.    For costs of suit incurred herein;

    d.    Pre- and post-judgment interest at the maximum rate allowed by law;

    e.    For such other further relief as the Court may deem just and proper.

## DESIGNATION OF PLACE FOR TRIAL AND JURY DEMAND

Pursuant to Kan. Local Rule 40.2, Plaintiffs designate Kansas City, Kansas as the location for trial. Plaintiffs demand trial by jury.

Respectfully submitted,

*/s/ James Griffin*
James D. Griffin    KS # 12545
Brent N. Coverdale    KS # 18798
Scharnhorst Ast Kennard Griffin PC
1100 Walnut, Suite 1950
Kansas City, MO 64106
Tel: (816) 268-9419
Fax: (816) 268-9409
E-mail:    jgriffin@sakg.com
    bcoverdale@sakg.com

and

        Michael P. Lyons (seeking admission *pro hac vice*)
        Christopher J. Simmons (seeking admission *pro hac vice*)
        Stephen Higdon (seeking admission *pro hac vice*)
        Deans & Lyons, LLP
        325 N. Saint Paul St., Suite 1500
        Dallas, Texas 75201-3891
        Tel: (214) 965-8500
        Fax: (214) 965-8505
        E-mail:      mlyons@deanslyons.com
                        csimmons@deanslyons.com
                        shigdon@deanslyons.com

        *Counsel for Plaintiffs*

{00194744.DOCX}      15