## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DAVID BEATY and DB SPORTS, LLC,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Case No. 19-2137-KHV-GEB** |
| | ) |
| **KANSAS ATHLETICS, INC.,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion to Compel (**ECF No. 54**).  The Court has considered the parties' oral arguments at the December 4, 2019 hearing, Plaintiffs' written Motion, and Defendants' Opposition to Plaintiffs' Motion to Compel (ECF No. 56) and is now prepared to rule.  For the reasons set forth below, Plaintiffs' Motion is **GRANTED**.

## I.    Background[1]

On November 4, 2018, Plaintiff David Beaty was the coach of Kansas Athletics, Inc. ("KAI")'s football program when Jeff Long, Chief Executive Officer of KAI, terminated Beaty's multi-year employment contract without cause.  Mr. Long informed Beaty that KAI would honor its obligation to pay out the $3 million remaining on his

---

[1] Unless otherwise noted, the information recited in this section is taken from Plaintiffs' Complaint (ECF No. 1); Defendant's Answer (ECF No. 34); and the briefing regarding Plaintiffs' Motion to Compel (ECF Nos. 54, 56).  This background information should not be construed as judicial findings or factual determinations.

contract and released a media statement saying the same.  Beaty contends KAI officials then began searching for a way to avoid paying the contractual obligation.  Before the first payment was due on the $3 million, the University of Kansas' ("KU") General Counsel wrote a letter to Beaty informing him that KAI would not make the first payment owed under the contract. The basis for the refusal was because KAI was being investigated by the NCAA[2] regarding whether a football staff member (not Beaty) violated a NCAA rule during Beaty's tenure.  KAI's letter to Beaty indicated any severance payments would be suspended until completion of the investigation, and at that time KAI would determine whether Beaty's termination would be for cause.  Plaintiffs contend KAI used the self-initiated investigation to justify failure to comply with its duty to pay out his contract.

In connection with Beaty's employment agreement, KAI correspondingly entered into a multi-year professional services agreement with DB Sports, LLC, under similar termination terms.  Following KAI's refusal to pay, on March 12, 2019, Plaintiffs Beaty and DB Sports, LLC filed suit against Defendant KAI alleging breach of contract and violation of the Kansas Wage Payment Act, KSA § 44-315(b).

In its Answer, Defendant admits it terminated Beaty without cause and maintains it did not know of the allegations leading to the present NCAA investigation until conducting exit interviews of employees. (ECF No. 34 at 4, 34.)  Among other defenses, Defendant argues Plaintiffs are not entitled to any relief based upon the affirmative defense of the "after-acquired-evidence doctrine." (ECF No. 34 at 14, ¶ 4.)  KAI's general defense is

---

[2] National Collegiate Athletics Association.

Beaty is not owed any further money because he violated NCAA rules, which would constitute a termination with cause.

Following a scheduling conference in September 2019 (ECF No. 37), this case has continued to progress through discovery.

## II.     Plaintiffs' Motion to Compel (ECF No. 54)

On December 4, 2019, this Court held a conference to discuss a discovery issue raised by the parties.  Following that conference, the undersigned established briefing deadlines for a motion to compel encompassing the arguments presented by counsel during the conference, leading to the instant motion.  (Order, ECF No. 52.)   After review of both the oral and written arguments, the Court is prepared to rule.

### A.     Discovery at Issue

Plaintiffs propounded discovery to Defendant directed at eliciting information about other NCAA violations by head coaches and the resulting treatment of the coaches by KAI. Plaintiffs contend no other head coaches neither had their pay suspended nor had they been fired for cause despite the presence of NCAA violations.  According to Plaintiffs, this includes the current head football coach who was accused of violating the same NCAA rule as Beaty—allowing analysts to instruct players.  The discovery Plaintiffs seek falls into three main categories:

> (1) KAI's actions and employment decisions in the wake of the NCAA alleging multiple Level 1 violations against Kansas basketball that relate to a federal criminal conviction secured in the Southern District of New York that featured references to multiple Kansas basketball coaches— who are still employed by KAI—during the trial;

(2) KAI's actions and employment decisions in the wake of the Kansas City Star publishing a detailed account of Kansas football having multiple analysts engaging in impermissible coaching activities in 2019 under Les Miles; and

(3) KAI's actions and employment decisions in the wake of the NCAA alleging and then determining that Kansas football had engaged in academic fraud under Mark Mangino, leading to Kansas being placed on probation and losing multiple scholarships between 2007 and 2009.

(Pls.' Motion to Compel, ECF No. 54 at 3).

Plaintiffs' written discovery requests to Defendant seek: 1) communications concerning the events described in these categories; 2) any investigations they spawned; 3) contracts for the relevant coaches; and 4) information exchanged by and between KAI and the Big 12 Conference or the NCAA relating to these events. (*Id.*) Some requests for production and requests for admission also expand the scope of this inquiry to determine whether KAI has ever terminated a coach for cause or suspended their pay and, if so, the reason for such employment action.

### B.    Arguments of the Parties

Plaintiffs argue this discovery is relevant because it is aimed at eliciting facts to show whether Defendant would have actually terminated Beaty for cause, in good faith, upon alleged NCAA rule infractions prior to Defendant terminating him without cause. Plaintiffs contend Defendant's intent and state of mind are at issue for multiple reasons. Plaintiffs claim Defendant's assertion of the after-acquired-evidence defense places the disputed discovery at issue.  To utilize the defense, Plaintiffs maintain Defendant must first demonstrate that Beaty's wrongdoing was of such severity that he in fact would have been terminated on those grounds alone if Defendant had known of it at the time of the

discharge.[3]   Plaintiffs also contend Beaty's KWPA claim seeks penalties for "willful" violation under K.S.A. § 44-315(b).   Therefore, Plaintiffs should be able to discover evidence of Defendant's intent; and finding information regarding Defendant's handling of similar situations is relevant to this intent.   Finally, Plaintiffs contend Beaty's breach of the agreement must have been material and Defendant's termination must have been in good faith, based on a theory of rescission. (ECF No. 54 at 4-5.)

Defendant argues this discovery is not relevant because intent is not at issue in a breach-of-contract action.   Defendant states to show a breach of contract, Plaintiffs must simply establish five elements: (1) the existence of a contract; (2) sufficient consideration; (3) Beaty's performance or willingness to perform the contract; (4) KAI's breach of the contract; and (5) damages to Beaty caused by the breach.[4]   Defendant contends Plaintiffs' claim will fail on the third element because Beaty cannot show he performed in compliance with his contractual obligation to adhere to NCAA rules, making Defendant's "state of mind" with respect to this failure by Beaty irrelevant. (Def.'s Brief, ECF No. 56 at 3.) Defendant also contends this is not an employment discrimination case where comparing Beaty's treatment and conduct to that of other KU coaches might be used to show whether Beaty's termination was somehow "pretextual" or a cover for allegedly unlawful discrimination.

---

[3] Pls.' Motion, ECF No. 54 at 4 (quoting *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362–63 (1995)).
[4] Def.'s Brief, ECF No. 56 at 2-3 (citing *Britvic Soft Drinks Ltd. v. ACSIS Technologies, Inc.*, 265 F. Supp. 2d 1179, 1187 (D. Kan. 2003)).

Defendant further argues there is no authority presented to suggest satisfaction of the elements of a breach-of-contract claim requires Beaty's performance to be only "materially" complete.  (*Id*.) In addition, Defendant maintains Plaintiffs are incorrectly suggesting Defendant is trying to rescind the agreement, but Defendant is not.  Defendant contends there is no good-faith element of a breach-of-contract claim, and Plaintiffs misinterpret the function of the after-acquired-evidence doctrine in this non-discrimination context. (*Id*. at 4.)

### C.     Duty to Confer

As a threshold matter, the Court first considers whether the parties have sufficiently conferred regarding Plaintiffs' Motion, as is required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2.[5]  After discussion with the parties in the December 4, 2019 phone conference the Court is satisfied counsel have adequately conferred as required.

### D.     Legal Standards

#### 1.     Scope of Discovery

Trial "[c]ourts are given broad discretion to control and place appropriate limits on discovery."[6]  And "a magistrate [judge] is afforded broad discretion in the resolution of

---

[5] D. Kan. Rule 37.2 provides the court will not entertain any motion to resolve a discovery dispute pursuant to Fed. R. Civ. P. 26 through 37, unless the attorney for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion.  "A 'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party.  It requires the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so." D. Kan. Rule 37.2.

[6] *Semsroth v. City of Wichita*, No. 06-2376-KHV-DJW, 2007 WL 2287814, at *1 (D. Kan. Aug. 7, 2007) (citing *Kutilek v. Gannon*, 132 F.R.D. 296, 297 (D. Kan. 1990) (discussing whether to stay discovery).

non-dispositive discovery disputes."[7]  Applicable to this dispute is the discovery standard outlined in Fed. R. Civ. P. 26.

Under Rule 26(b)(1), a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Despite the focus on proportionality in the rule since 2015, relevancy is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on" any party's claim or defense.[8]  In other words, the court should permit a request for discovery unless "*it is clear* that the information sought can have *no possible* bearing" on a claim or defense.[9]  Information need not be admissible in evidence to be discoverable, but the scope of discovery must be proportional to the needs of the case.[10]

If the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery 1) does not come within the scope of relevancy as defined under Rule 26(b)(1), or 2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the

---

[7] *In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2014 WL 61799, at *1 (D. Kan. Jan. 8, 2014) (citing *A/R Roofing, L.L. C. v. Certainteed Corp.*, 2006 WL 3479015, at *3 (D. Kan. Nov. 30, 2006) (other internal citations omitted).

[8] *Williams v. UnitedHealth Grp.*, No. 2:18-CV-2096, 2020 WL 528604, at *1-*2 (D. Kan. Feb. 3, 2020) (quoting *Gilmore v. L.D. Drilling, Inc.*, No. 16-CV-2416-JAR-TJJ, 2017 WL 2439552, at *1 (D. Kan. June 6, 2017)).  *See also In re EpiPen*, No. 17-MD-2785-DDC-TJJ, 2018 WL 1586426, at *2 (D. Kan. Apr. 2, 2018) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

[9] *Gilbert v. Rare Moon Media, LLC*, No. 15-MC-217-CM, 2016 WL 141635, at *4 (D. Kan. Jan. 12, 2016) (quoting *Sheldon v. Vermonty*, 204 F.R.D. 679, 689–90 (D. Kan. 2001) (emphasis in original)).

[10] Fed. R. Civ. P. 26(b)(1).

ordinary presumption in favor of broad disclosure.[11] On the other hand, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery bears the burden to show the relevancy of the request.[12] Relevancy determinations are generally made on a case-by-case basis.[13]

### 2.    After-Acquired-Evidence Defense

Because the parties' arguments focus on the defense offered, a brief review of the doctrine is prudent.   Pursuant to the after-acquired-evidence doctrine, an affirmative defense asserted by KAI,[14] an employee is not entitled to damages for breach of an employment contract if the employer can show: (1) the employee is guilty of some misconduct of which the employer was unaware; (2) the misconduct would have justified discharge; and (3) *if the employer had known of the misconduct, the employer would have discharged the employee*.[15]

Under the after-acquired-evidence doctrine, the employer "must first establish that the wrongdoing was of such severity that the employee *in fact* would have been terminated on those grounds alone if the employer had known of it at the time of the discharge."[16]

---

[11] *Riley v. PK Mgmt., LLC*, No. 18- 2337-KHV-TJJ, 2019 WL 1509861, at *2 (D. Kan. Apr. 5, 2019) (citing *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003)).

[12] *Id.* (citing *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008)).

[13] *Id.* (citing *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011)).

[14] Answer, ECF No. 34, p. 14, ¶ 4.

[15] *See Walker v. Saga Commc'ns, Inc.*, 11 F. Supp. 2d 1292, 1294 (D. Kan. 1998) (emphasis added); *see also Stouder v. M & A Tech., Inc.*, No. 09-4113-JAR-KGS, 2012 WL 28066, at *10 (D. Kan. Jan. 5, 2012); *Firestone v. Hawker Beechcraft Int'l Serv. Co.*, No. 10-1404-JWL, 2011 WL 13233153, at *11 (D. Kan. Sept. 28, 2011) (allowing discovery relevant to an after-acquired-evidence defense).

[16] *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362–63 (1995) (emphasis added).

Although often utilized in employment discrimination cases since its adoption in the 1995 U.S. Supreme Court case of *McKennon v. Nashville Banner Pub. Co.*,[17] the after-acquired-evidence doctrine has also been applied in breach-of-employment-contract cases where discrimination is not alleged.[18]

### E.    Analysis

Defendant argues the discovery sought by Plaintiffs is irrelevant on its face, but this Court disagrees.  The parties are reminded that discovery is broad.  At this case's inception, Defendant asserted the after-acquired-evidence doctrine as an affirmative defense. Therefore, it injected the three *McKennon* prongs into this case.  Although the information sought through this motion to compel may not be directly relevant solely to the basic elements of Plaintiffs' breach of contract claim, it *is* relevant to the third prong of the after-acquired-evidence doctrine.  There exists a question of fact whether, if Defendant had known of Beaty's alleged NCAA violation, it would have *actually* terminated Beaty's employment for cause. Given the claims and defenses in this case, it is not far-fetched to believe a reasonable jury might find Beaty's conduct did not constitute a true default of his employment contract because Defendant did not consider similar actions by other coaches a default.[19]  But regardless of whether the information is ever admitted to a jury for

---

[17] 513 U.S. 352 (1995).

[18] *Stouder*, 2012 WL 28066, at *10 (citing *Gassman v. Evangelical Lutheran Good Samaritan Soc'y, Inc.,*933 P.2d 743, 745–46 (Kan. 1997); *see also Walker,* 11 F. Supp. 2d at 1294.

[19] *See, e.g*., *Stouder*, 2012 WL 28066, at *11 (finding a reasonable jury could give weight to trial testimony regarding whether the terminated employee's pre-termination conduct actually rose to the level of misconduct to justify termination under the after-acquired-evidence doctrine).

consideration, the information bears on a defense asserted in this case, making it fall squarely within the scope of discovery permitted under Rule 26(b)(1).

Also, pursuant to K.S.A. § 44-315(b), Beaty has alleged *willful* nonpayment by Defendant under the Kansas Wage Payment Act. Therefore, Defendant's intent is placed at issue by this claim. If Plaintiffs' claim is supported—that Defendant concocted this NCAA violation to avoid paying Beaty when Defendant did not engage in similar behavior with other coaches—that would tend to show willful conduct by Defendant. Thus, the discovery sought is at least minimally relevant to Beaty's claim of willful nonpayment.

Although Beaty also argues his breach of the parties' contract must have been "material" and Defendant's retroactive termination must have been in good faith (ECF No. 54 at 4-5), this Court makes no findings on this claim. Defendant contends this is incorrect, as it has not asserted a claim for rescission and Plaintiffs provide no authority for this argument. (ECF No. 56 at 3-4.) Although this Court tends to agree with Defendant on this point, this is not dispositive of the relevance issue. Regardless of the materiality or good faith of any breach, as noted above, the Court finds the information relevant to Defendant's after-acquired-evidence defense and Beaty's willful nonpayment claim.

Although not mentioned in the parties' briefs, during the December 4, 2019 hearing Defendant argued the disputed discovery is improper for another reason. Defendant contends Plaintiffs seek the information to gain leverage against it by attempting to explore topics Beaty believes are uncomfortable for Defendant. However, the parties jointly submitted a Protective Order, approved by this Court, in which they agreed discovery regarding NCAA investigations would be confidential. (Protective Order, ECF No. 38.)

The Protective Order states confidential information includes "confidential documents and information related to investigations, including those obtained by the NCAA or the parties as part of any NCAA investigation and confidential NCAA case documents." (*Id.* at 3). The parties discussed this issue during the scheduling conference and subsequently drafted a protective order to keep this information confidential.  Therefore, Beaty is prohibited from disclosing the information regarding NCAA violations to the public in order to pressure Defendant.  As such, the Court finds Defendant's argument unconvincing. Furthermore, if the parties determine through the production of these materials that the current protective order should to be enlarged in scope to address the information being produced pursuant to this Order, the parties should confer and discuss amendment of the protective order accordingly.

## III.   Conclusion

As noted above, relevancy is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on any party's claim or defense."[20]  Applying this broad standard, it is *not* at all clear the information sought by Plaintiffs would have "no possible bearing" on the after-acquired-evidence defense or Plaintiffs' claim for willful nonpayment.[21] Therefore, in its discretion and for the reasons stated above, the Court **GRANTS** Plaintiffs' Motion to Compel.  Defendants are ordered to respond to Plaintiffs' discovery requests, and the parties are directed to confer and

---

[20] *Williams*, 2020 WL 528604, at *1 (internal citations omitted).
[21] *Gilbert*, 2016 WL 141635, at *4 (quoting *Sheldon*, 204 F.R.D. at 689–90).

determine an appropriate timeline for such production.  The Court expects the information to be produced forthwith.

**IT IS THEREFORE ORDERED**, for the reasons stated above, that Plaintiffs' Motion to Compel (**ECF No. 54**) is **GRANTED**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 18th day of February, 2020.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge