IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAVID BEATY and DB SPORTS, LLC, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>KANSAS ATHLETICS, INC., )<br>)<br>Defendant. ) | Case No. 2:19-CV-02137 |

**DEFENDANT'S OBJECTION TO, AND MOTION FOR REVIEW OF, THE
MAGISTRATE JUDGE'S ORDER ON PLAINTIFFS' MOTION TO COMPEL**

Pursuant to Local Rule 72.1.4(a) and Federal Rule 72(a), defendant Kansas Athletics, Inc. ("**Kansas Athletics**") hereby respectfully objects to, and requests that the District Court review, the Magistrate Judge's ruling (Doc. 93) on Plaintiffs' Motion to Compel. In support of its motion, Kansas Athletics states as follows:

**INTRODUCTION**

This is a breach-of-contract case that centers on whether former University of Kansas ("**KU**") head football coach David Beaty is entitled to further payments under his contract. Kansas Athletics contends he is not so entitled because he was personally involved in significant NCAA violations involving the clandestine use of a non-countable coach to give impermissible, early-morning instruction to student-athletes, which all agree—if Beaty committed such violations—would be a breach of Beaty's contract. Among other things, Plaintiffs contend that Kansas Athletics is relying on the NCAA violations that occurred on Beaty's watch as "pretext" for some other, as-yet-unarticulated "true reason" for not paying Beaty any further monies. Plaintiffs sought discovery about how Kansas Athletics has handled alleged NCAA violations with respect to other coaches in an attempt to show such "pretext" (in one case with respect to

another sport altogether (basketball), and in another case with respect to a coach that left KU more than ten years ago (Mark Mangino)).

But in a breach-of-contract action, supposed "pretext" is irrelevant. If a party has a right to cease payment under a contract, that party's "true" or "ulterior" motive does not matter. Stated another way, a party can exercise its contractual rights for any reason or no reason at all. This is not an alleged discrimination case where it is important for the Court to ensure that "true" or "ulterior" motives are non-discriminatory. (And, to be absolutely clear, Kansas Athletics has no such "ulterior" motive—it simply wants both parties to abide by Beaty's contract, which requires that Beaty abstain from committing NCAA violations and to report any such violations.) Accordingly, Kansas Athletics objected to providing the information regarding alleged NCAA violations pertaining to other KU coaches.

Plaintiffs then moved to compel the production of documents relating to purported NCAA violations that supposedly occurred with respect to other KU coaches. (Doc. 54.) The Magistrate Judge granted Plaintiffs motion on February 18, 2020 (Doc. 93), ruling that Kansas Athletics is required to produce certain categories of documentation pertaining to (i) the alleged violations levied against KU basketball that relate to certain allegations surrounding third-parties who do not work for Kansas Athletics, and who were convicted in the Southern District of New York on federal fraud charges; (ii) alleged NCAA violations relating to purported impermissible coaching occurring under new KU football coach Les Miles; and (iii) alleged NCAA violations relating to purported academic misconduct that allegedly occurred in KU's football program more than 10 years ago, under former coach Mark Mangino. (*See* Doc. 93, pp. 3 – 4.) Magistrate Judge Birzer based her decision on the notion that Kansas Athletics' handling of these alleged violations with respect to other coaches and other football programs is relevant to Kansas

Athletics' "intent," which is purportedly put at issue by Kansas Athletics' after-acquired evidence defense and by the intent element of Beaty's claim under the Kansas Wage Payment Act (the "**KWPA**").

Kansas Athletics' respectfully submits that the Magistrate Judge erred in her ruling. First, under the after-acquired evidence doctrine, when applied outside of the discrimination context—*i.e.*, in a context where pretext is of no concern—a party's "intent," "good faith," or what the party "would have done" are all irrelevant. Second, as to the KWPA argument, Kansas Athletics' treatment of other coaches under entirely separate fact patterns does not bear one way or another on whether Kansas Athletics supposedly "intended" to improperly withhold monies from Coach Beaty.[1]  The key question here is whether Kansas Athletics "truly believes" that Coach Beaty committed NCAA violations, which gives rise to a right to terminate his contract for cause and all payments thereunder.  Whether Kansas Athletics believes that Beaty's violations are "more severe" or "more mild" than other alleged NCAA violations is beside the point—there is no "severity" or "mildness" scale under the contract.  Either Kansas Athletics "truly believes" that Beaty committed the violations giving rise to a right to terminate the payments, or it does not.  Treatment of other coaches under other NCAA rules does not bear on that question.

## ARGUMENT

The scope of discovery is defined by Federal Rule of Civil Procedure 26(b)(1).  Pursuant to the rule, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to

---

[1] As explained below, Kansas Athletics does not believe there is any relevance to comparing the alleged NCAA violations levied against other coaches and other programs.  But even if such comparison were appropriate, the differences are stark:  the alleged NCAA violations under Mangino occurred more than ten years ago, under an entirely separate administration; Kansas Athletics disputes the NCAA allegations against the basketball program, whereas the evidence confirms Beaty's violations; and the alleged violations that occurred under Coach Miles, while involving the same NCAA rule, lacked the intent, orchestration, and direct involvement that occurred with Beaty.

any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). When the requested material is not relevant on its face, as is the case here, it is plaintiff's burden to establish that the discovery he requests is relevant. *See Riley v. PK Management, LLC*, No. 18-cv-2337-KHV-TJJ, 2019 WL 1509861, at * 2 (D. Kan. Apr. 5, 2019). "Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB, 2019 WL 2448569, at *2 (D. Kan. June 12, 2019) (citation omitted).

## I. The information regarding treatment of other coaches is not relevant to Kansas Athletics' after-acquired-evidence defense.

The Magistrate Judge ruled that, as part of its after-acquired evidence defense, Kansas Athletics would have to prove the "third prong" of the after-acquired evidence test set forth in the U.S. Supreme Court case of *McKennon v. Nashville Banner Pub. Co.*, *i.e.*, that "had [Kansas Athletics] known of the misconduct" at the time it occurred, Kansas Athletics "would have discharged" Beaty at that earlier time. (Doc. 93, pp. 8–9.)

Importantly, however, *McKennon* was a discrimination case. Kansas Athletics respectfully submits that the Magistrate Judge erred by misconstruing the function of the after-acquired evidence defense in a non-discrimination context. In the discrimination context, it is important for the Court to consider whether the plaintiff's latent misconduct would have "in fact" led to an earlier termination, thus superseding and overriding the supposed unlawful, discriminatory motive. But where, as here, the claims do not implicate any supposed unlawful, discriminatory motive, there is no need to inquire or determine whether a termination "in fact" would have been made, because there is no need to ensure that any supposed unlawful, ulterior motive would have been superseded and overridden.

601732019.2

Rather, in a non-discrimination breach-of-contract case, the only question is whether the latent misconduct is a ground for termination under the contract at issue.  The Kansas Supreme Court has recognized this distinction in *Gassmann v. Evangelical Lutheran Good Samaritan Soc., Inc.*, in which it noted that, where the case is an ordinary breach of contract case "not involving any overriding governmental interest," the limits on the after-acquired evidence defense imposed in discrimination cases do not apply.  *See* 933 P.2d 743, 727 (Kan. 1997) (agreeing with the Court of Appeals' conclusion that "the limits placed on the after-acquired evidence doctrine disseminated in *McKennon* [a discrimination case] are not applicable to the case at bar").  Rather, in a non-discrimination case, liability to the employee is cutoff if the employer can "establish after-acquired evidence <u>sufficient</u> for termination."  *See id.*, at 727 – 30 (emphasis added).

Kansas Athletics respectfully submits that the Magistrate Judge did not consider the afore-cited language from the Kansas Supreme Court in *Gassmann*, which demonstrates that the after-acquired evidence doctrine functions differently when there is not any "overriding governmental interest" involved in the case.  While the Magistrate Judge cited to other District of Kansas cases applying the three *McKennon* prongs outside of the discrimination context,[2] the litigants in those cases did not dispute what prongs should apply, and thus the Courts in those decisions did not analyze whether all three *McKennon* prongs should be applied outside of the discrimination context.  Any analysis of what prongs should apply in a non-discrimination context should take into account that, in a strict breach-of-contract case like this, requiring that the employer prove only evidence "sufficient for termination" is more consistent with the well-

---

[2] *See* Doc. 93, p. 8, n. 15, citing *Walker v. Saga Commc'ns, Inc.,* 11 F. Supp. 2d 1292, 1294 (D. Kan. 1998); *Stouder v. M & A Tech., Inc.,* No. 09-4113-JAR-KGS, 2012 WL 28066, at *10 (D. Kan. Jan. 5, 2012); *Firestone v. Hawker Beechcraft Int'l Serv. Co.,* No. 10-1404-JWL, 2011 WL 13233153, at *11 (D. Kan. Sept. 28, 2011).

accepted proposition that a party is permitted to exercise its contractual rights for any reason or no reason at all, regardless of "motive" or "good faith."[3] *See August Medical Complex, Inc. v. Blue Cross of Kan., Inc.*, 608 P.2d 890, 896 (Kan. 1980) ("When the right to terminate a contract is absolute under the clear wording in the agreement the motive of a party in terminating such an agreement is irrelevant to the question of whether the termination is effective.").[4]

Kansas Athletics respectfully submits that the Magistrate Judge did not properly account for the reality that a party to a contract may exercise its contractual rights for any reason or no reason at all, and thus it need not show what it "would have" done; rather, it need only show that the after-acquired evidence justifies termination under the terms of the contract.

Further, even if the Magistrate Judge were correct in ruling that Kansas Athletics is required to show that it "would have" terminated Beaty had it learned of the NCAA violations when they occurred, that still does not render relevant all of Plaintiffs' requested information about other coaches. For instance, there is no dispute that the key decision-makers that presided over how to treat former football coach Mark Mangino more than ten years ago in the face of alleged NCAA violations are now gone. The Athletic Director over Mangino was Lew Perkins—two Athletic Directors prior to the current Director, Jeff Long. Kansas Athletics respectfully submits that the decision-making processes of Lew Perkins and his staff could not

---

[3] Again, to be clear, Kansas Athletics has acted in nothing but good faith here, but merely points out that Plaintiffs' allegations of "bad faith" or "ulterior motive" are irrelevant in this contract setting.

[4] *See also Shri Gayatri, LLC v. Days Inns Worldwide, Inc.*, 2018 WL 1542376, at *5 (D. Mass. Mar. 28, 2018) ("If a party has an express right to terminate, the motivation of that party in terminating the contract is irrelevant. . . . [T]he law is also clear that where the right to terminate a contract is absolute under the wording in an agreement, the motive of a party in terminating such an agreement is irrelevant to the question of whether the termination is effective."); *Lekki Capital Corp. v. Automatic Data Processing, Inc.*, 2002 WL 987147, at *3 (S.D.N.Y. May 14, 2002) (The law "is clear that when the right to terminate a contract is absolute under the wording in an agreement, the motive of a party in terminating such an agreement is irrelevant to the question of whether the termination is effective."); *U.S. Nat'l Bank of Oregon v. Boge*, 814 P.2d 1082, 1092 (Or. banc 1991) ("[The defendant] acted within its express rights under the contract and the UCC. For that reason, [the defendant's] motive is irrelevant. The obligation to act in good faith does not bar a party from enforcing whatever legal rights he possesses.").

possibly have any bearing on whether Jeff Long and his staff—more than ten years later—"would have" terminated Beaty earlier had they known of the NCAA violations.

Likewise, Mangino's and Self's programs were alleged by others to have committed violations of entirely different NCAA rules than those that Kansas Athletics has determined Beaty violated.  Further, as to the allegations against the basketball program, unlike the violations that occurred under Beaty's watch, Kansas Athletics' review of the facts and evidence has led Kansas Athletics to conclude that the allegations regarding basketball lack merit. Similarly, as to Coach Miles, though the NCAA rule in play is the same, the scale and scope of the alleged violations differ significantly: the evidence shows that Beaty drove the NCAA violations and that they were intentional and orchestrated, whereas Coach Miles was not involved in the alleged violations occurring during his tenure, and the violations were inadvertent and unintentional.

Kansas Athletics' treatment of and response to such distinct and separate alleged rule violations does not lend any insight to whether Kansas Athletics "would have" terminated Beaty at some earlier time for violating the rules that Beaty and his staff violated.  Thus, at most, the discovery on this issue should be limited to Kansas Athletics' treatment of and response to the alleged violations under Coach Miles, which at least involved the same NCAA rule that Beaty and his staff violated (to be clear, Kansas Athletics contends that there are significant and material differences between what transpired during Coach Miles' tenure as opposed to the NCAA violations that Beaty personally drove and participated in).

## II. The information regarding treatment of other coaches is not relevant to plaintiff's claim under the KWPA.

Plaintiff also alleges that Kansas Athletics should be penalized under the KWPA because Kansas Athletics supposedly acted "willfully" by failing to pay additional monies to Beaty.  In

this context, "willful" means having the "design, purpose, or intent to do wrong or to cause an injury to another." *Sibley v. Sprint Nextel Corp.*, No. 08-CV-2063-KHV, 2017 WL 8944042, at *6 (D. Kan. Apr. 21, 2017) (citation omitted). Plaintiffs claim, and the Magistrate Judge agreed, that exploring how Kansas Athletics has treated other coaches will somehow reveal whether it acted with the "intent to do wrong" or "cause an injury" to Beaty.

But it is unclear how that is so. Whether Kansas Athletics supposedly intended to "harm" Beaty will turn on whether or not Beaty committed an NCAA violation in breach of his contract, and whether Kansas Athletics' purportedly "knew" or "understood" Beaty did not commit any such violation but terminated him for cause anyhow. Again, there is no "severity" or "mildness" scale under Beaty's contract, and thus whether Kansas Athletics believed or believes that Coach Beaty's NCAA violations were more severe or less severe than the alleged NCAA violations purportedly committed by other coaches is irrelevant under the contract, and it is irrelevant to whether Kansas Athletics supposedly does not believe that Beaty committed NCAA violations (*i.e.*, whether Kansas Athletics supposedly "willfully" or "knowingly" failed to pay Beaty under his contract).

Again, the sole question under the contract is: did Beaty commit the violations? If Kansas believes he did not commit the violations but withheld monies anyway, that would show willfulness. How the treatment of other coaches bears on that issue remains unclear. The behavior or conduct of any other coach in connection with any other purported NCAA violations will not change the text of the NCAA rules, it will not change whether Beaty's conduct violated the NCAA rules, and—most germane to Plaintiffs' KWPA claim—it will not change whether Kansas Athletics (according to Beaty) purportedly "knew" or "understood" that Beaty had not committed any such NCAA violations.

## CONCLUSION

For these reasons, Kansas Athletics respectfully requests that the District Court review and reverse the Magistrate Judge's order (Doc. 93) compelling production of material pertaining to other KU coaches.

Dated:  March 3, 2020

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: /s/ *Timothy J. Davis*
    W. Perry Brandt (EDMO # 28292MO)
    Timothy J. Davis (MO # 62837)
    Sarah R. Holdmeyer (MO # 69140)
    1200 Main Street, Suite 3500
    Kansas City, MO 64105
    (816) 374-3200 telephone
    (816) 374-3300 facsimile
    perry.brand@bclplaw.com
    tim.davis@bclplaw.com
    sarah.holdmeyer@bclplaw.com

ATTORNEYS FOR DEFENDANT KANSAS ATHLETICS, INC.

**CERTIFICATE OF SERVICE**

  I certify that on this 3rd day of March, 2020, a copy of the foregoing was filed with the Court's electronic filing system, which sent notice of this filing to the following counsel of record:

James D. Griffin
Brent N. Coverdale
Scharnhorst Ast Kennard Griffin PC
1100 Walnut, Suite 1950
Kansas City, MO 64106
jgriffin@sakg.com
bcoverdale@sakg.com

and

Michael P. Lyons (admitted *pro hac vice*)
Christopher J. Simmons (admitted *pro hac vice*)
Stephen Higdon (admitted *pro hac vice*)
Christopher W. Carr (admitted *pro hac vice*)
Lyons & Simmons, LLP
325 N. Saint Paul St., Suite 1500
Dallas, Texas 75201-3891
mlyons@yons-simmons.com
csimmons@lyons-simmons.com
shigdon@lyons-simmons.com
ccarr@lyons-simmons.com

*Counsel for Plaintiffs*

              /s/ *Timothy J. Davis*
              Attorney for Defendant