# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **DAVID BEATY and DB SPORTS, LLC,** | ) |
| **Plaintiffs,** | ) |
| v. | ) Case No. 19-2137-KHV-GEB |
| **KANSAS ATHLETICS, INC.,** | ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motions to Quash Subpoenas to third parties JM Associates (**ECF No. 94**) and XOS Technologies (**ECF No. 95**). The Court has considered Defendant's Motions, Plaintiffs' combined Response to the motions (ECF No. 113), and Defendant's combined Reply (ECF No. 124) and is now prepared to rule. For the reasons set forth below, Defendant's Motions are **DENIED**, with instructions for the parties to revisit the terms to the Protective Order before the information is produced.

## I.    Background[1]

On November 4, 2018, Plaintiff David Beaty was the coach of Kansas Athletics, Inc. ("KAI")'s football program when Jeff Long, Chief Executive Officer of KAI, terminated Beaty's multi-year employment contract. Mr. Long informed Beaty that KAI would honor its obligation to pay out the $3 million remaining on his contract and released

---

[1] See this Court's prior Memorandum and Order, ECF No. 93. This background information should not be construed as judicial findings or factual determinations.

1

a media statement saying the same. Beaty contends KAI officials then began searching for a way to avoid paying the contractual obligation. Before the first payment was due on the $3 million, the University of Kansas' ("KU") General Counsel wrote a letter to Beaty informing him that KAI would not make the first payment owed under the contract. The basis for the refusal was because KAI was being investigated by the NCAA[2] regarding whether a football staff member (not Beaty) violated a NCAA rule during Beaty's tenure. KAI's letter to Beaty indicated any severance payments would be suspended until completion of the investigation, and at that time KAI would determine whether Beaty's termination would be for cause. Plaintiffs contend KAI used the self-initiated investigation to justify failure to comply with its duty to pay out his contract.

In connection with Beaty's employment agreement, KAI correspondingly entered into a multi-year professional services agreement with DB Sports, LLC, under similar termination terms. Following KAI's refusal to pay, on March 12, 2019, Plaintiffs Beaty and DB Sports, LLC filed suit against Defendant KAI alleging breach of contract and violation of the Kansas Wage Payment Act, KSA § 44-315(b).

In its Answer, Defendant admits it terminated Beaty without cause and maintains it did not know of the allegations leading to the present NCAA investigation until conducting exit interviews of employees. (ECF No. 34 at 4, 34.) Among other defenses, Defendant argues Plaintiffs are not entitled to any relief based upon the affirmative defense of the "after-acquired-evidence doctrine." (ECF No. 34 at 14, ¶ 4.) KAI's general defense is

---

[2] National Collegiate Athletics Association.

Beaty is not owed any further money because he violated NCAA rules, which would constitute a termination with cause.

Following a scheduling conference in September 2019 (ECF No. 37), this case has continued to progress through discovery.

## II.     Rulings on Motion to Compel

On December 4, 2019, this Court held a conference to discuss a discovery issue raised by the parties. Following the conference, the undersigned established briefing deadlines (Order, ECF No. 52) which lead to Plaintiffs' motion to compel discovery (ECF No. 54). Generally, Plaintiffs asked that Defendant be ordered to produce discovery regarding NCAA violations by Defendant's other coaches and Defendant's resulting treatment of those coaches. In the order granting Plaintiffs' motion, the undersigned U.S. Magistrate Judge found Plaintiffs' proposed discovery sought evidence which was relevant to their KPWA claims and Defendant's after-acquired-evidence defense. (Mem. and Order, ECF No. 93 at 9-10, filed Feb. 18, 2020.)

Soon after the undersigned issued her discovery opinion, Defendant filed two motions to quash subpoenas related, in part, to the discovery opinion. (ECF Nos. 94, 96.) Following Defendant's Objection to the discovery order (ECF No. 110), District Judge Kathryn H. Vratil overruled the Objection (Mem. and Order, ECF No. 130). Therefore, the discovery ruling stands and Defendant is required to produce discovery regarding NCAA violations by other coaches consistent with the Court's prior order.

3

## III.     Motions to Quash

Defendant seeks to quash subpoenas directed at two non-parties: 1) JM Associates, Inc. ("JM Associates") (Motion, ECF No. 94), and 2) XOS Technologies, Inc. d/b/a XOS Digital ("XOS Technologies") (Motion, ECF No. 96).  The subpoena to JM Associates seeks, *inter alia*, unedited, raw videographic footage for all episodes of "Miles to Go," a documentary series detailing Kansas football head coach Les Miles' first season at Kansas University, along with other information regarding Coach Miles. (ECF No. 94 at 1.)[3] The subpoena to XOS Technologies seeks video of all football practices from Spring 2019 to present and the video for all football practices and games under Coach Miles. (ECF No. 96 at 1.)[4] Defendant acknowledges the information sought from both subpoenas essentially mirrors the document requests submitted by Plaintiffs which were the topic of the earlier motion to compel.[5]

### A.     Parties' Arguments

Defendant's objections largely fall into two camps:  1) relevance and 2) privacy concerns.  Defendant first contends information related to Coach Miles' tenure as head coach is not relevant to any claim or defense in this case.  (ECF No. 94 at 2; ECF No. 96 at 2.)  Its relevancy objections track those previously asserted in its Motion to Compel, and

---

[3] According to Defendant, Plaintiffs' subpoena to JM Associates, Inc. requests essentially the same documents that Plaintiffs previously requested from Defendant in document Request No. 68 (ECF No. 94 at 2.)

[4] According to Defendant, Plaintiffs' subpoena to XOS Technologies requests the same, or similar, documents that Plaintiffs previously requested from Defendant in document Request Nos. 63 and 67. (ECF No. 96 at 1-2.)

[5] *See supra* notes 3, 4.

the motions to quash note, "until [Judge Vratil's] review . . . is complete and the Court's final ruling on these issues has been handed down, [Defendant] respectfully submits that Plaintiffs should not be able to obtain information about other coaches aside from Beaty (i.e., Coach Miles) by subpoenaing such information from third parties." (ECF No. 94 at 3; ECF No. 96 at 3.)  Additionally, Defendant makes relevance objections regarding the contracts between Defendant and both non-parties, JM Associates and XOS Technologies. (ECF No. 94 at 3-4; ECF No. 96 at 3-4.)

In addition to the relevance issues, Defendant argues any raw video footage is likely to contain confidential information regarding non-parties, as well as proprietary information about the KU football program, such as plays, strategies, and other competitive information. (ECF No. 94 at 3.)  Because Plaintiff Beaty is seeking coaching jobs at other schools, Defendant asks that video be produced under an "attorney's eyes only" designation, as protection from potential competition.  Defendant is also concerned the videos may contain information about students whose information is protected by the Federal Educational Rights and Privacy Act ("FERPA"). (ECF No. 96 at 3.)

In response, Plaintiffs contend not only that these objections are invalid, but Defendant lacks standing to assert the objections.  (ECF No. 113 at 1-2.)  Additionally, Plaintiffs argue any concerns about proprietary information and FERPA are alleviated by the Protective Order already in place in this lawsuit. (ECF No. 113 at 2, citing to Protective Order, ECF No. 38.)  Finally, Plaintiffs maintain the information is relevant for the same reasons argued in the prior discovery dispute, and discovery confirms Mr. Long and others in the administration were recorded discussing the firing of Coach Beaty, and recording for

5

the "Miles to Go" documentary took place and was planned before Coach Beaty's termination was announced. (ECF No. 113 at 3.) Plaintiffs argue footage regarding the football team under Miles is relevant especially as it bears on Defendant's state of mind and credibility given its different treatment of coaches and analysts under Coach Miles as compared to Coach Beaty. (*Id*.) Plaintiffs contend the contracts between the non-parties and Defendant are probative of the timeline for when filming of the documentary occurred and may provide additional insight into Defendant's motivations regarding NCAA investigations. (*Id*. at 4.)

### B. Analysis

As a threshold issue, the Court reviews Defendant's standing to object to the subpoenas to third parties. Generally, a motion to quash a subpoena may only be made by the party to whom the subpoena is directed.[6] However, an exception arises when the party challenging the subpoena "has a personal right or privilege in respect to the subject matter requested in the subpoena."[7] Defendant's only standing argument is it has a vested interest as a party in making sure the scope and cost of discovery stay within appropriate bounds (ECF No. 124 at 3). However, the Court rejects this argument, as any party to any litigation could assert such an argument to any third-party subpoena. But the information sought from the subpoenas mirrors the earlier discovery requests to Defendant. And, because KU

---

[6] *Wichita Firemen's Relief Ass'n v. Kansas City Life Ins. Co.*, No. 11-1029-KGG, 2012 WL 3245451, at *2 (D. Kan. Aug. 8, 2012) (citing *Peterbilt of Great Bend, LLC v. Doonan*, 05–1281–JTM, 2006 WL 3193371, at *2 (D.Kan. Nov.1, 2006) (internal citation omitted))
[7] *Id*. (quoting *Smith v. Midland Brake, Inc.,* 162 F.R.D. 683, 685 (D. Kan. 1995); *see also Hertenstein v. Kimberly Home Health Care, Inc.,* 189 F.R.D. 620, 635 (D. Kan. 1999)).

6

personnel, administration, and students are apparently depicted in the videos and Defendant is a party to the contracts sought, the Court finds Defendant has a right or privilege in the information requested. Therefore, Plaintiffs' standing argument is rejected.

Moving to the parties' relevance arguments, as expected, both parties tie the relevance of the information sought to this Court's prior discovery order, and the District Judge's review of the order. Given the recent rulings on this issue finding the information regarding other coaches relevant,[8] the Court need not delve further into this issue. To the extent the contracts between Defendant and the non-parties named in the instant subpoenas were not part of the earlier objections, the Court finds them also to be relevant. "[T]he scope of discovery under a subpoena is the same as the scope of discovery under [Federal Rules of Civil Procedure] 26(b) and 34."[9] And under Rule 26(b), relevance is broadly construed during discovery.[10] Any contract between JM Associates or XOS Technologies and Defendant may be probative of the timeline surrounding Coach Beaty's termination, and they could provide additional insight into Defendant's motivations regarding NCAA investigations. Therefore, the Court finds the information sought by the subpoenas to be at least minimally relevant for purposes of discovery.

---

[8] *See* Judge Vratil's decision finding "evidence regarding [Defendant's] treatment of coaches who committed NCAA violations" relevant. (Mem. & Order ECF No. 130 at 7-8.)

[9] *Wichita Firemen's Relief Ass'n*, 2012 WL 3245451, at *4 (quoting *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.,* 211 F.R.D. 658, 622 (D. Kan. 2003) (internal citations omitted).

[10] *See Parker v. Delmar Gardens of Lenexa, Inc.*, No. 16-2169-JWL-GEB, 2017 WL 1650757, at *3 (D. Kan. May 2, 2017) (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc*., No. 08-212-KHV, 2008 WL 2309011 at *3 (D. Kan. June 3, 2008)

Although the information is relevant, the Court recognizes Defendant's concern regarding its confidential nature. Defendant's protection of its student information is mandated by FERPA.[11] Additionally, the Court notes it may be entirely appropriate to produce some information to counsel only, given that Coach Beaty may very well be considered a competitor to Defendant's coaching staff at this juncture.

On review of the current Protective Order (ECF No. 38), the Court notes the protections contained therein do not include an "attorneys' eyes only" designation. And, although the current order defines student records as confidential, the order includes no specifics regarding the handling of student information or necessary notifications under FERPA.[12] Therefore, although the Court orders the subpoenaed information be produced to Plaintiffs, the parties will first be provided the opportunity to confer and revise the current Protective Order. Such a revised order should follow the District of Kansas form,[13] but should also include a process for disclosure of FERPA-protected information,[14] and an "attorneys' eyes only" designation for highly sensitive information.

The parties are cautioned that, although the proposed revised order should include the ability to designate highly sensitive information as "attorneys' eyes only," it should

---

[11] *See generally* 20 U.S.C. § 1232g. *See also* 34 C.F.R.§ 99.31(a)(9) ("Under what conditions is prior consent not required to disclose information?").
[12] In the Protective Order, the definition of Confidential Information includes ""education records as defined by FERPA." (ECF No. 38 at 3.)
[13] *See* Protective Order Guidelines at http://www.ksd.circ10.dcn/index.php/rules/.
[14] *See, e.g.,* the FERPA-related Amended Protective Order in *Clark v. Newman Univ.*, Case No. 19-1033-JWB-GEB (D. Kan. Feb. 27, 2020).

also include a provision for challenging such a designation.[15] The undersigned magistrate judge intends to resolve any disputes regarding such designations on an expedited basis, including the use of telephone conferences to discuss any dispute prior to any related motions being filed.[16]

## IV. Conclusion

**IT IS THEREFORE ORDERED**, for the reasons stated above, that Defendant's Motions to Quash Subpoenas to third parties JM Associates (**ECF No. 94**) and XOS Technologies (**ECF No. 95**) are **DENIED**.  However, prior to the production of information to Plaintiffs, the parties are instructed to confer regarding a Revised Protective Order to address both FERPA-protected student information and "attorneys' eyes only" protection.  Such conference must occur and a proposed Revised Protective Order must be submitted to the undersigned for review no later than **May 15, 2020**.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 28th day of April, 2020.

s/ Gwynne E. Birzer<br>
GWYNNE E. BIRZER<br>
United States Magistrate Judge

---

[15] *See, e.g., A/R Roofing, L.L.C. v. CertainTeed Corp.*, No. 05-1158-WEB-KMH, 2005 WL 6794228, at *3 (D. Kan. Dec. 5, 2005) (discussing the use of "attorney-eyes only" designation and the court's intention to "resolve such disputes on an expedited basis.")

[16] *See* Scheduling Order, ECF No. 37 (noting "If issues remain unresolved after the parties have complied with the meet and confer requirements applicable to discovery-related motions under Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2, the parties and counsel are strongly encouraged to consider arranging a telephone conference with the undersigned magistrate judge before filing such a motion.